# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**JOHN STAFFORD, et al.,**

      **Plaintiffs,**

                    **Case No. 3:12-cv-050**

                    **Judge Thomas M. Rose**

**-v-**                    **Magistrate Judge Michael R. Merz**

**JEWELERS MUTUAL INSURANCE CO.,**

      **Defendant.**

_____

### ENTRY AND ORDER GRANTING STAFFORD'S MOTION TO RE-OPEN (Doc. #60); GRANTING JEWELERS MUTUAL'S MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. #47); FINDING STAFFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #43) MOOT AND TERMINATING THIS CASE

_____

Plaintiffs John Stafford and U.S. Diamond and Gold d/b/a Stafford's ("Stafford") filed a complaint against Defendant Jewelers Mutual Insurance Co. ("Jewelers") in the Common Pleas Court of Montgomery County, Ohio on January 24, 2012. (Doc. #2.) Jewelers timely removed the Complaint to this Court based upon this Court having diversity subject matter jurisdiction. (Doc. #1.)

Jewelers then moved for judgment on the pleadings (doc. #13) and Stafford filed a Motion for Partial Summary Judgment (doc. #27) followed by a Motion for Leave To File an Amended Complaint (doc. #29). The Court granted Stafford's Motion for Leave To File an Amended Complaint and determined that Jewelers' pending Motion for Judgment On the Pleadings and Stafford's pending Motion for Partial Summary Judgment were moot. (Doc. #39.) Stafford then filed the First Amended Complaint ("FAC") that is now before the Court.

Stafford's FAC brings four (4) Claims for Relief. (Doc. #40.) The First Claim for Relief

is for a declaratory judgment that Jewelers owed Stafford both a duty of defense and indemnification and that Jewelers is liable to Stafford for all costs and expenses associated with Jewelers' failure to honor both. The Second Claim for Relief is for breach of a contract of insurance. The Third Claim for Relief is for bad faith in the handling, processing and denial of Stafford's demand for coverage. Stafford's Fourth Claim for Relief is for punitive damages.

Jewelers has now, with leave of Court, filed another Motion for Judgment On the Pleadings ("MJOP"). (Doc. #47.) Stafford has filed, with leave of Court, another Motion for Partial Summary Judgment (doc. #43), and has filed a Motion To Re-Open and Supplement Pending Motions (doc. #60). All three of these Motions are now fully briefed and ripe for decision.

Stafford's Motion To Re-Open will first be addressed followed by the standard of review for MJOPs, a relevant factual background and an analysis of Jewelers' current MJOP. Stafford's current Motion for Summary Judgment will then be considered.

## MOTION TO RE-OPEN

Stafford seeks to re-open and supplement the pending MJOP and Motion for Partial Summary Judgment with documents allegedly recently received in discovery. (Doc. #60.) Stafford argues that the documents that it seeks to add to the record constitute additional evidence in support of the pending Motions. Jewelers opposes Stafford's Motion To Re-Open because the documents sought to be submitted do not change the ultimate result and because the documents sought to be submitted are not documents properly considered for purposes of its MJOP. (Doc. #62.)

When evaluating whether a plaintiff has made a cognizable claim, courts generally may

not consider matters outside of the pleadings unless the motion is treated as one for summary judgment. *See Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). In this case, the Court elects to not treat Jeweler's MJOP as a motion for summary judgment.

The Sixth Circuit has clarified the scope of what a court may consider without reaching matters outside of the pleadings. Copies of written instruments which are attached to a pleading as an exhibit may be considered. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1997). In addition, documents attached to a motion to dismiss are considered part of the pleadings if the documents are referred to in the complaint and are central to the claim. *Id.* at 89.  Further, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be considered. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)(citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)). However, a court may not consider a document, not attached to the complaint, that is in dispute due to its authenticity, validity or enforceability for purposes of a motion to dismiss. *See Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012).

Stafford's Motion To Re-Open identifies eight (8) documents to be considered, Exhibits A-1 through A-8. Exhibit A-1, Exhibit A-5 and Exhibit A-6 relate to Exhibit F to Stafford's FAC. Exhibit A-2 and Exhibit A-3 relate to Exhibit C to Stafford's FAC. Exhibit A-4 is the same as Exhibit E to Stafford's FAC. Exhibit A-7 is the same as Exhibit H to Stafford's FAC. Finally, Exhibit A-8 relates to Exhibit G of Stafford's FAC. Thus, all of the documents that Stafford wishes to add to the record either relate to exhibits to his FAC or are the same as exhibits to his FAC. Finally, although Jewelers argues that certain of the proposed documents may not be considered for purposes of summary judgment because they constitute hearsay, Jewelers does

not challenge their authenticity, validity or enforceability for purposes of a motion for judgment on the pleadings.

Therefore, Stafford's Motion To Re-Open and Supplement Pending Motions (doc. #60) is granted. The eight (8) documents that Stafford wishes the Court to consider will be considered for purposes of Jeweler's pending MJOP and Stafford's pending Motion for Partial Summary Judgment.

The Parties took the opportunity presented by Stafford's Motion To Re-Open to argue the meaning of the documents that Stafford sought to add to the record. The arguments made, if relevant, will be addressed below.

**STANDARD OF REVIEW FOR MOTION FOR JUDGMENT ON THE PLEADINGS[1]**

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)(quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). A motion for judgment on the pleadings is granted when there is no material issue of fact and the party making the motion is entitled to judgment as a matter of law. *Id.*

The pleading requirements necessary to survive a motion for judgment on the pleadings require more than labels and conclusions and a formulaic recitation of the elements of a cause of action. *Id.* at 550 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The factual

---

[1]When setting forth the standard of review for motions for judgment on the pleadings, Stafford cites only to Ohio law. However, federal procedural law applies to Jewelers' Motion for Judgment On the Pleadings. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 459 (6th Cir. 1986).

allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*

The exhibits to Stafford's FAC and all of the documents from Case No. 3:06-cv-371 (the "2006 Case") may be properly considered for Jewelers' MJOP. In addition, as more fully set forth above, the documents that Stafford submitted to supplement the record will be considered.

## RELEVANT FACTUAL BACKGROUND

The basis of Stafford's Complaint is a policy of insurance termed the Businessowners Special Policy. Jewelers issued Jewelers Pak number 912223 (the "Pak") to Stafford effective from September 15, 2005 through September 15, 2006. (FAC ¶ 2.) The Pak includes three separate policies of insurance: (1) the Businessowners Special Policy (the "Policy"); (2) the Jewelers Block Policy; and (3) the Commercial Umbrella Liability Policy. Thus, the Policy is one of three policies included in the Pak.

Stafford alleges that Jewelers had an obligation to both defend and indemnify Stafford under the Policy. (Id. at ¶¶ 1, 5.) Jewelers disclaimed coverage under the Policy for a counterclaim made by Julius Klein Diamonds ("JKD") against Stafford in a case filed in the Court of Common Pleas of Montgomery County, Ohio, case number 06CV8379. (Id. at ¶¶ 30, 58.) JKD's Counterclaim was actually made on April 12, 2007, in the 2006 Case, that was the result of the removal of case number 06CV8379 from the Court of Common Pleas of Montgomery County, Ohio to this Court. (Case No. 3:06-cv-371, doc. #26.)

Stafford's claims and JKD's counterclaim in the 2006 Case were adjudicated by a jury in November of 2008. (Id. at docs. #189, #190, #191, #192, #193, #194, #195, #198, #200, #210, #213 and #214.) Judgment was entered in favor of Stafford on April 13, 2009. (Id. at doc. #221.)

After trial, Stafford moved for attorneys' fees and costs. (Id. at doc. #232.) Stafford moved for attorneys' fees and costs for all work performed on the litigation, subject to some adjustments. (Id. at docs. #232 and #234.) The invoices that Stafford presented for payment included time spent on JKD's Counterclaim. (Id. at doc. #236, Ex. B.)

The result of the Trial was appealed to the Sixth Circuit but the appeal was subsequently dismissed. (Id. at docs. #251 and #252.) The Judgment entered by this Court was then vacated and the matter dismissed upon joint motion. (Id. at #250.)

A confidential settlement agreement between Stafford and JKD was filed. (Id. at doc. #249.) Among other things, the confidential settlement agreement in the 2006 Case provides that each party agrees to pay their respective court costs and attorneys' fees. (Id.)

### JKD's Counterclaim

JKD's counterclaim in the 2006 Case alleges that Stafford made false representations to JKD concerning the pink diamond, which was the subject of the litigation. JKD further alleged that Stafford made the false representations to JKD pursuant to an insurance fraud scheme and made them with the intent of deceiving and defrauding JKD, and/or Stafford's insurer and/or Brinks. Finally, JKD alleged that Stafford's false representations to JKD were intentional, knowing, malicious, reckless, and in conscious disregard of JKD's rights.

No claims related to Jeweler's duty to defend or indemnify were raised at any time during the 2006 Case. However, on August 10, 2007, Stafford requested defense of JKD's counterclaim by Jewelers. (FAC ¶ 31.) Jewelers then hired coverage counsel, Howard Randell ("Randell"), who authored a coverage opinion dated September 14, 2007. (FAC ¶ 51; Stafford's Mot. for Partial Summ. J., Ex. C-4.) After receiving Randell's coverage opinion, Jewelers responded to

Stafford by letter dated September 17, 2007, denying a defense of JKD's counterclaim. (FAC ¶ 58, Ex. C)

On September 24, 2007, Stafford advised Jewelers that it did not intend, at that time, to contest Jewelers' coverage position as stated in Jewelers' September 17, 2007 letter. (FAC ¶ 71.) In a letter dated October 2, 2007, Randell indicated to Jewelers that Stafford's counsel did not agree with the September 24 letter that there was no coverage under the Policy. (Stafford Mot. To Re-Open, Ex. A-2.) This letter also refers to the proposed letter agreement sent to Stafford's counsel. (Id.) Randell's time sheets also indicate that he had drafted the September 24 letter and discussed the September 24 letter with Stafford's counsel. (Stafford Mot. To Re-Open, Ex. A-3.)

Stafford then signed a letter/agreement, dated October 26, 2007, indicating that Stafford , "at this time," does not intend to contest Jewelers Mutual's coverage position as stated in its September 17, 2007 letter.  (FAC Ex. C to Ex. G.) In this letter/agreement Stafford acknowledges that, based upon the rationale set forth in Jewelers' September 17, 2007 letter, and, in the interest of avoiding further litigation, it did not intend to pursue its tender of defense and indemnity for the JKD counterclaim. (Id.) Finally, in this letter/agreement, Stafford indicates that its position is without prejudice to the claim asserted by Stafford against Jewelers Mutual for coverage in the main case. (Id.) Stafford confirmed its agreement with this letter/agreement by signing and returning the letter/agreement. (Id.)

### **The Policy**

Stafford alleges that Jewelers refused to provide Stafford with a defense under the Policy, which is contained in the Pak Policy. Relevant provisions of the Policy are:

COVERAGE L - BODILY INJURY LIABILITY/PROPERTY DAMAGE LIABILITY

"We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" to which this insurance applies. The "bodily injury" or "property damage" must be caused by an "occurrence" which takes place in the "coverage territory," and the "bodily injury" or "property damage" must occur during the policy period.

COVERAGE P - PERSONAL INJURY LIABILITY/ADVERTISING INJURY LIABILITY

"We" [Jewelers] pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" to which this insurance applies. The "bodily injury" or "property damages" must be caused by an "occurrence" which takes place in the "coverage territory," and the "bodily injury" or "property damages" must occur during the policy period.

1. "We" [Jewelers] cover:

   a. "Personal injury' arising out of an offense committed in the course of "your" business, excluding advertising, publishing, broadcasting, or telecasting done by "you" or on "your" behalf; and

   b. "Advertising injury" arising out of an offense committed in the course of advertising "your" goods, products or services.

2. The "personal injury" or "advertising injury" offense must be committed:

   a. within the "coverage territory," and

   b. during the policy period.

Personal Injury is defined in the Policy as:

17. "Personal Injury" means injury (other than "bodily injury," "property damage," or "advertising injury") arising out of one or more of the following offenses:

a.    Oral or written publication of material:
       1) that slanders or libels a person or organization;
       2) that disparages a person's or an organization's goods, products or services; or
       3) that violates a person's right of privacy;

b.    false arrest, detention, or imprisonment;

c.    malicious prosecution; or

-8-

     d.      wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

Advertising injury is defined in the Policy as:

    3. "Advertising injury means injury (other than "bodily injury," "property damage," or "personal injury") arising out of one or more of the following offenses:

        a. oral or written publication of material:

            1) that slanders or libels a person or organization;
            2) that disparages a person's or organization's goods, products, or services; or
            3) that violates a person's right of privacy….

(FAC Ex. B Commercial Liability Coverages.)

Over two (2) years after the completion of the Trial in the 2006 Case and over one (1) year after the conclusion of the 2006 Case, Stafford again contacted Jewelers requesting indemnity for their defense costs related to JKD's counterclaim in 2006 Case. (FAC ¶¶ 87, 90, 92; Stafford Mot. To Re-Open, Ex. A-5, A-7.) Jewelers again set up claims files (Stafford Mot. To Re-Open, Ex. A-4) and obtained an opinion and draft response from Randell. (Stafford Mot. To Re-Open, Ex. A-1, A-6) Jewelers ultimately again declined coverage. (FAC ¶¶ 88, 93, 95; Stafford Mot. To Re-Open, Ex. A-8.) The lawsuit now before the Court was filed in State court on January 24, 2012, and removed to this Court on February 17, 2012.

## ANALYSIS OF JEWELERS' MJOP

In its MJOP, Jewelers sets forth several arguments as to why each of Stafford's claims should be dismissed. All of Stafford's claims rest on whether Jewelers had a duty to defend. This will first be addressed followed by the remainder of Jewelers' arguments.

### Duty To Defend the Claims Pled In the Counterclaim

Jewelers argues that it has no duty to defend JKD's counterclaim. Stafford argues that Jewelers has a duty to defend JKD's counterclaim.

A determination of whether a claim is covered under the terms of an insurance policy is a question of law for the court to decide. *Columbia Casualty Co. v. City of St. Clairsville, OH*, No. 05 CV 898, 2007 WL 756706 at *5 (S.D. Ohio Mar. 8, 2007). In this case, Stafford has alleged that Jewelers has a duty to defend under the terms of the Policy. Thus, the Court must determine whether Stafford's claim is covered under the terms of the Policy.

A duty to defend arises if the allegations in the pleadings state a claim which is potentially or arguably within the policy coverage or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded.…" *City of Willoughby Hills v. Cincinnati Insurance Co.*, 459 N.E.2d 555, 558 (Ohio 1984). A duty to defend may arise even if there is no duty to indemnify. *Motorists Mutual Insurance Co. v. National Dairy Herd Improvement Association, Inc.*, 750 N.E.2d 1169, 1174 (Ohio Ct. App. 2001). However, an insurer need not provide a defense if there is no set of facts alleged in the underlying complaint that, if proven true, would invoke coverage. *Cincinnati Indemnity Co. v. Martin*, 710 N.E.2d 677, 678 (Ohio 1999).

### The Policy Coverage

The Policy, which is a part of the Pak, provides that Jewelers has the right and duty to defend a suit seeking damages which may be covered under the Commercial Liability Coverage Section of the Policy. (FAC. Ex. A.) Relevant here, Coverage L of the Commercial Liability Coverage insures, among other things, damages due to "bodily injury" or "property damage." (Id.) Coverage P of the Commercial Liability Coverage covers damages due to "personal injury" or "advertising injury." (Id.)

### The Claim

The claim in this case is for defense costs for a counterclaim made by JKD against Stafford in the 2006 Case. JKD's counterclaim alleges that Stafford made false representations to JKD concerning the pink diamond, which was the subject of the litigation. JKD further alleges that Stafford made the false representations pursuant to an insurance fraud scheme and made them with the intent of deceiving and defrauding JKD, and/or Stafford's insurer and/or Brinks.

The elements of a civil fraud claim are: (1) a representation; (2) material to the transaction at hand; (3) made falsely; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation; and (6) resulting injury proximately caused by the reliance. *Wing v. Anchor Media, Ltd. of Texas*, 570 N.E.2d 1095, 1099 (Ohio 1991). These elements are precisely the elements alleged in JKD's counterclaim.

In addition, all of the parties and particularly Stafford, treated this counterclaim in the 2006 Case as a claim for fraud. JKD's counterclaim asserts that Stafford made knowing and intentional false representations. (Id. doc. #26.) Stafford's answer refers to false representations and the "fraud counterclaim." (Id. doc. #27.) The motion for summary judgment filed by Stafford in the 2006 Case is for judgment on JKD's "Counterclaim alleging fraud." (Id. doc. #86.) This Court's opinion on Stafford's motion for summary judgment refers to JKD's counterclaim as one for fraud. (Id. doc. #112.) Stafford's proposed jury instructions refer to JKD's counterclaim as one for fraud. (Id. doc. #178.) Finally, Stafford's Memorandum of Law In Support of Motion for Judgment as a Matter of Law refers to JKD's counterclaim as one for fraud. (Id. doc. #197.) Thus, JKD's counterclaim alleges fraud and Stafford maintained throughout the 2006 Case that JKD's counterclaim was for fraud.

In an effort to obtain coverage, Stafford offers several interpretations of JKD's counterclaim. Each will be addressed seriatim.

Oral Publications That Disparage JKD's Services

Stafford first argues that the allegations in the counterclaim constitute oral publications that disparage JKD's services. However, none of the statements in JKD's counterclaim disparage JKD's services. An assertion in JKD's counterclaim that the UPS box inside the Brink's shipping bag proved to be empty when JKD opened it does not disparage JKD. Further, this statement is not alleged to have been made by Stafford and thus cannot constitute an oral publication by the insured. Finally, a disparagement claim requires publication to others, s*ee A & B-Abell Elevator Co. v. Columbus/Central Ohio Building and Construction Trades Council*, 651 N.E. 2d 1283, 1293-94 (Ohio 1995), but JKD does not allege in its counterclaim that Stafford published its alleged statements to others.

Stafford also asserts that a "reasonable inference" is that the statements that Stafford was alleged, in the counterclaim, to have made, is that the statements would prompt JKD to communicate them to a third party. However, this is not a reasonable inference. JKD asserts in its counterclaim that Stafford's statements were made to JKD. JKD does not allege that the statements were made to others or that JKD repeated Stafford's statements to others. Thus, this interpretation by Stafford is not reasonable.

Negligent Misrepresentation

Stafford next argues that JKD's counterclaim alleges negligent misrepresentation. However, the counterclaim alleges that Stafford knowingly and intentionally made false statements to JKD with the intent of deceiving and defrauding JKD. Also, the word "negligence"

-12-

is not to be found in the counterclaim. False statements knowingly and intentionally made are clearly not negligent misrepresentations.

This argument is also not supported by the law. While Ohio has recognized the tort of negligent misrepresentation, Ohio has only recognized this tort where there is an obligation to advise a professional client. *See Haddon View Investment Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 214-15 (Ohio 1982). That is not the case here. Thus, this interpretation by Stafford is not reasonable.

Defamation

Stafford next argues that the counterclaim alleges all of the elements of a defamation claim. In Ohio, the elements of a defamation claim are: (1) a false and defamatory statement; (2) about plaintiff; (3)  published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special damages. *Davis v. Jacobs*, 710 N.E.2d 1185, 1186 (Ohio Ct. App. 1998).

JKD's counterclaim alleges that Stafford made a false statement to JKD but not about JKD. JKD's counterclaim does not allege that Stafford made any statements about JKD to third parties.[2] Thus, at least two of the elements of a defamation claim are not satisfied. This interpretation by Stafford is not reasonable.

Malicious Prosecution

Stafford next argues that the counterclaim alleges malicious prosecution. The civil tort of malicious prosecution in Ohio entails: (1) malicious institution of prior proceedings against the

---

[2]Stafford wants the Court to make a "reasonable inference" that Stafford communicated the alleged defamatory statements to "the world." This the Court cannot do based upon Stafford's Complaint.

plaintiff by the defendant; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceedings. *Robb v. Chagrin Lagoons Yacht Club, Inc.* 662 N.E.2d 9, 13 (Ohio 1996); *Criss v. Springfield Township*, 564 N.E.2d 440, 443 (Ohio 1990).

JKD's counterclaim contains no allegations of malicious prosecution, no allegations regarding probable cause and no allegations regarding the seizure of property in a prior proceeding. Thus, JKD's counterclaim is not for malicious prosecution.

There is only one reasonable interpretation of JKD's counterclaim against Stafford. JKD's counterclaim is a fraud claim. Stafford's FAC does not show otherwise.

### Coverage for the Fraud Counterclaim

#### Coverage L

Fraud is not covered by Coverage L because it is not an "occurrence" as defined in the Policy. For Coverage L to apply, there must have been an "occurrence." (FAC Ex. A.) An "occurrence" is defined as an accident and includes repeated exposure to similar conditions. (Id.) Fraud is not an accident. It requires intent and JKD's counterclaim pleads intent.

Also fraud is not covered by Coverage L because it is neither bodily injury nor property damage as required by Coverage L. Bodily injury is defined in the Policy as bodily harm, sickness or disease sustained by a person. (Id.) Property damage is defined as physical injury or destruction of tangible property or the loss of use of tangible property. (Id.)

#### Coverage P

Fraud is also not covered by Coverage P of the Policy. Coverage P applies to damages due to personal injury or advertising injury, and JKD's counterclaim does not allege a personal injury

-14-

or advertising injury. (Id.)

"Personal injury" is defined in the Policy as injury (other than "bodily injury," "property damage" or "advertising injury") arising out of one or more of the following offenses:

a.   Oral or written publication of material:

1) that slanders or libels a person or organization;
2) that disparages a person's or an organization's goods, products, or services; or
3) that violates a person's right of privacy;

b.   false arrest, detention, or imprisonment;

c.   malicious prosecution; or

d.   wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

(FAC Ex. A.)

JKD's counterclaim does not allege that Stafford made unprivileged false statements about JKD to third parties. JKD's counterclaim also does not allege that Stafford disparaged JKD's goods, products or services. Finally, JKD's counterclaim does not allege that Stafford violated JKD's right to privacy. Thus, JKD's counterclaim does not allege a personal injury.

JKD's counterclaim also does not allege an advertising injury. An advertising injury is defined as an injury (other than bodily injury, property damage or personal injury) arising out of one or more of the following offenses:

a.   oral or written publication of material:

1) that slanders or libels a person or organization;

2) that disparages a person's or organization's goods, products or services; or

3) that violates a person's right of privacy.

(FAC Ex. A.) Misappropriation of advertising ideas or style of doing business and infringement of copyrights, title, slogan, trademark or trade name are also listed as offenses. (Id.)

As set forth above, JKD's counterclaim does not allege that Stafford made unprivileged false statements about JKD to third parties; that Stafford disparaged JKD's goods, products or services; or that Stafford violated JKD's privacy rights. Further, JKD's counterclaim does not allege that Stafford misappropriated any advertising ideas from JKD or misappropriated JKD's style of doing business. Finally, JKD's counterclaim does not allege that Stafford infringed upon JKD's copyrights, titles, slogans, trademarks or trade names. Thus, JKD's counterclaim does not allege an advertising injury.

Stafford argues that JKD's counterclaim alleges reckless fraud which is covered by the policy. However, this does not change the fact that fraud, as a cause of action, is not included in the definition of "personal injury" and thus not insured by the Policy.

Even if Stafford could somehow show that JKD's counterclaim was insured under Coverage P, which he has not, JKD's counterclaim would be excluded. Personal injury or advertising injury arising out of oral or written publication of material done by or at the direction of an insured who knew it was false is excluded from Coverage P by the Policy. (FAC Ex. A.) JKD's counterclaim alleges that Stafford knew the representations he made to JKD were false. Thus, this exclusion would apply to Coverage P.

Stafford argues that fraud is covered by the Policy because the Policy does not state that fraud is excluded. However, the Policy states what is covered and does not attempt to identify all that is not covered.

Stafford also argues that the definition of Personal Injury does not require an occurrence.

-16-

To some extent, Stafford is correct. Coverage P does not require an occurrence. However, as determined above, Coverage P does not apply for other reasons.

**Conclusion On Coverage**

A duty to defend arises if the allegations in the pleadings state a claim which is potentially or arguably within the policy coverage or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded. In this case, based upon Stafford's FAC and other matters which the Court may consider, and based upon the arguments made by Stafford, JKD's counterclaim does not state a claim which is potentially or arguably within the policy coverage. Thus, Jewelers has no duty to defend JKD's counterclaim against Stafford.

Since Jewelers has no duty to defend, all of the claims in Stafford's FAC fail. Stafford's FAC is dismissed on this basis and Jeweler's MJOP is granted. However, in the interest of justice, Jewelers' remaining arguments will be addressed seriatim.

**<u>Bad-Faith Claim Barred By Statute of Limitations</u>**

Jewelers argues that Stafford's bad-faith claim should be dismissed because it is barred by the applicable four-year statute of limitations. Stafford responds that each of Jewelers' breaches of the duty of good faith create a separate cause of action for bad faith with a separate accrual date for statute of limitations purposes, which have not expired.

Ohio Rev. Code § 2305.09(D) provides a four-year statute of limitations for bad-faith claims regarding policies of insurance. *Wolfe v. Continental Casualty Co.*, 647 F.2d 705, 706 (6th Cir. 1981). Thus, there is a four-year statute of limitations on Stafford's bad-faith claims.

Jewelers asserts that the potentially pertinent dates triggering the running of the statute of limitations "range anywhere from the date of the underlying shipment of the 'pink diamond' on

February 12, 2006, through September 17, 2007," which is when Jewelers first denied coverage. (Id. at ¶¶ 3-22.) Stafford responds that Jewelers repeatedly breached its duties of good faith throughout the entire claims process which continued through Jewelers' denial of coverage on or about January 3, 2012, and that each of Jewelers' breaches of the duty of good faith created a separate cause of action for bad faith with a separate accrual date for statute of limitations purposes.

Under Ohio law, the date when there has been an invasion of a legally protected interest is when the statute of limitations begins to run on a tort such as bad faith. *The Way International, Inc. v. Executive Risk Indemnity, Inc.*, No. 3:07cv294, 2009 WL 3157403 at *12 (S.D. Ohio Sept. 28, 2009)(citing *Kunz v. Buckeye Union Insurance Co.*, 437 N.E.2d 1194, 1196 (Ohio 1982)). Further, for purposes of a failure to defend, the statute of limitations begins to run when claims are made against the insured and the insured is informed by the insurer that a defense will not be provided. *Id.*(citing *Kosa v. Frederick*, 737 N.E.2d 1071, 1073 (Ohio Ct. App. 2000). Finally, a statute of limitations is not "retriggered" by repeating requests for relief. *See  Hall v. The Scotts Co.*, 211 F. App'x 361, 363 (6th Cir. 2006); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

The "Discovery Rule"

Normally a statute of limitations begins to run when there has been an invasion of a legally protected interest. However, under the "discovery rule," a statute of limitations begins to run when the plaintiff discovers, or in the exercise of reasonable care, should have discovered that she or he was injured. *Chic Promotions, Inc. v. Jewelers Mutual Insurance Co.*, No. 1:07cv417, 2009 WL 3126454 at *3 (S.D. Ohio Sep. 24, 2009). Yet, the "discovery rule" is not applied to bad-faith claims. *Id.*

-18-

In this case, Stafford was informed that a defense would not be provided in a letter dated September 17, 2007. (Compl. ¶ 22.) Jewelers retained the Chicago firm of Leahy, Eisenberg & Frankel to allegedly threaten to file suit against Stafford on September 24, 2007. (Id. at ¶ 40.) The remaining allegations in Stafford's Complaint refer to repeated attempts to obtain coverage. Assuming, without finding, that hiring a Chicago law firm was bad faith, the latest that the four-year statute of limitations on Stafford's bad-faith claim ran was on September 24, 2011. The Complaint in this matter was initially filed on January 24, 2012. Thus, Stafford's bad-faith claim must be dismissed because it is barred by the four-year statute of limitations.

In an attempt to circumvent dismissal, Stafford argues that Jewelers intentionally delayed disclosure of the "fact" that its own coverage counsel advised that Jewelers' had a duty to defend and that this is evidence of ongoing bad faith. However, Randell's coverage letter does not advise Jewelers that it has a duty to defend. (Stafford Mot. for Partial Summ. J., Ex. C-4.) In fact, Randell's coverage letter advises Jewelers that Jewelers does not have a duty to defend with the possibility that a duty to defend may arise later as the 2006 Case progresses. Thus, Randell's coverage letter is not evidence of bad faith because it does not show any bad faith and because the discovery rule does not apply.

Wrongful Concealment

In another attempt to circumvent dismissal, Stafford argues that the statute of limitations was tolled by Jeweler's fraudulent concealment. The fraudulent concealment identified by Stafford is:

> 1. The FAC alleges that Jewelers knew that it had a duty to defend Stafford on JKD's counterclaim, but instead, entered into a scheme not to defend and cover up the information that Jewelers knew.

2. In furtherance of the scheme, Jewelers sought out a law firm that would provide a written opinion that coverage existed and concealed this information from Stafford. Also, the law firm did not reference plain language of the counterclaim which triggered coverage.

3. May of 2012 was the first time Stafford received evidence of Jewelers' fraudulent concealment. The information received in May of 2012 was an email from one Jewelers' adjuster to another that said, "[W]e should at least acknowledge receipt and that we [are] investigating the tender."

The elements that must be pled to establish fraudulent concealment to toll the statute of limitations are: 1) wrongful concealment of their actions by defendants; 2) failure of the plaintiff to discover the operative facts that are the basis of the cause of action within the limitations period; and 3) plaintiff's due diligence until discovery of the facts. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012)(citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). Further, the factual allegations of fraudulent inducement must be pled with particularity. *Id.* Finally, for the wrongful concealment element, a plaintiff must point to "affirmative acts of concealment," and mere silence or unwillingness to divulge wrongful activities is not enough. *Id.*

In this case, Stafford does not plead a wrongful act with particularity. Pleading that Jewelers entered into a scheme is not enough. Pleading that Jewelers sought out a law firm for an opinion is not enough, even if the law firm did not reference the plain language of the counterclaim in their opinion. An allegation that the law firm failed to reference the plain language of the counterclaim may be critical of the opinion, it is not evidence of a wrongful act. Finally, an email suggesting acknowledgment and investigation is not evidence of a wrongful act.

Also, Stafford has not pled an inability to discover the operative facts. Stafford had the same facts as Jewelers from JKD's counterclaim and from the Policy. This information  provided

the basis for a coverage analysis, and Stafford had its own counsel. Stafford's many requests for coverage are not a showing that Stafford diligently tried to discover the operative facts that might lead to a fraudulent concealment claim. Instead, Stafford withdrew the tender of JKD's counterclaim in November of 2007, failed to pursue any claims regarding JKD's counterclaim in the 2006 case, failed to pursue any claims against Jewelers after Jewelers denied coverage in September of 2007 and failed to pursue any claims against Jewelers when the request for coverage was repeated and denied in late 2010 and early 2011.

Finally, Stafford argues that dismissal of the bad-faith claim based upon a statute of limitations is inappropriate because Jewelers has prevented Stafford from discovering information to support a fraudulent inducement claim. However, failing to provide discovery is a discovery issue and not a pleading issue, particularly in light of the law that silence or unwillingness to divulge wrongful activities is not enough to show wrongful concealment.

Estoppel From Using the Statute of Limitations

Stafford's final argument is that Jewelers should be estopped from alleging that the statute of limitations bars its claims because Jewelers intentionally delayed disclosure of its coverage counsel's opinion. However, this argument is without merit.

Stafford asserts that Jewelers' coverage counsel advised that Jewelers had a duty to defend an allegation of reckless fraud and that the allegation of reckless fraud was not specifically excluded from defense under the Policy. However, the Court is unable to find this assertion in the only letter from coverage counsel that it has seen, the letter attached as Exhibit C-4 to Stafford's Motion for Partial Summary Judgment. In fact, the term "reckless fraud" appears nowhere in the coverage opinion. Also, the coverage opinion advises Jewelers to deny coverage, which it did.

-21-

Conclusion On the Bad-Faith Claim

Stafford has made no bad-faith allegations by Jewelers that can be considered by the Court

that occurred within the limitations period. Further, Stafford has not pled facts sufficient to toll

the limitations period. Accepting the pleadings as true and viewing them in a light most favorable

to Stafford, Stafford's bad-faith claim is barred by the four-year statute of limitations.

## All Claims Barred By Res Judicata/Collateral Estoppel and Judicial Estoppel

### Res Judicata/Collateral Estoppel

Jewelers next argues that no bad-faith or contract claim that allegedly existed during or

prior to the time of the previous litigation is viable now because they are barred by the doctrines

of res judicata or collateral estoppel as a result of the previous litigation. According to Jewelers,

Stafford and Jewelers were adverse parties in the prior litigation and litigated claims to

conclusion based upon the same policy and the same underlying diamond loss claim. Stafford

responds that its claims are not barred because the issues do not arise from the same transactions

as the 2006 Case and were not actually and directly litigated in the 2006 Case.

Federal res judicata principles apply in successive federal diversity actions.[3] *Hamilton v.*

*State Farm Fire and Casualty Co.*, No. 96-4141, 1997 WL 664772 at *1 (6th Cir. Oct. 23,

1997)(citing *J.Z.G. Resources, Inc. v. Shelby Insurance Co.*, 84 F.3d 211, 214 (6th Cir. 1996)).

Jewelers argument is based upon successive federal diversity actions. This Case and the 2006

Case are successive federal diversity actions. Therefore, federal res judicata principles apply.

Federal res judicata principles provide that a claim will be barred if the following

_____

[3]Stafford identifies case law regarding Ohio's res judicata doctrine, but that law is not
relevant here.

elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Id.*(citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995), *cert. denied,* 517 U.S. 1220 (1996)). Further, a majority of the courts that have considered whether the facts underlying a breach of insurance contract claim and a bad-faith claim are sufficiently related for purposes of res judicata have concluded that both claims arise out of the insurer's refusal to pay the insured the proceeds of the policy. *Id.* at \*2(citing *Porn v. National Grange Mutual Insurance Co.*, 93 F.3d 31 at n.3 (1st Cir. 1996)); *see also Rawe v. Liberty Mutual Fire Insurance Co.*, 462 F.3d 521(6th Cir. 2006)(finding that first-party bad-faith claims pursued after a previous insurance contract litigation are barred by res judicata). Finally, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

In the 2006 Case, Stafford was the plaintiff and Jewelers was one of the defendants named in Stafford's complaint. Stafford brought two (2) claims against Jewelers. One for a declaratory judgment that Stafford is entitled to payment for damages as provided in the Policy and one for breach of the Policy. The complaint in the 2006 Case was brought on October 23, 2006, and Jewelers was granted summary judgment on January 28, 2008. On June 11, 2009, Stafford appealed, among other things, the summary judgment granted to Jewelers. On September 11, 2009, the appeal was dismissed pursuant to an agreed motion to dismiss.

In this case, the parties are identical to parties in the 2006 Case. Also, the 2006 Case was

-23-

tried to a final judgment, including an appeal that was taken and later dismissed. The same underlying facts give rise to both the previous declaratory judgment and contract actions litigated between Stafford and Jewelers - the loss of a pink diamond and a denial of coverage under the Policy by Jewelers. More importantly, Stafford was informed on September 17, 2007, that Jewelers decided that it would not provide a defense to Stafford on JKD's counterclaim and failed to raise that issue during the 2006 Case which was still ongoing at the time.

Stafford asserts that it made no claims in the 2006 Case stemming from Jewelers' refusal to defend and indemnify and that it was not required to do so. Both of these assertions are correct. However, res judicata precludes the parties or their privies from relitigating issues that <u>could have been raised</u> in that action and Stafford <u>could have raised</u> the issues that it now raises.

Stafford's declaratory judgment and breach of contract actions in the 2006 Case and this lawsuit both involve Jewelers' alleged failure to satisfy the Policy. Further, Jewelers' failure to defend JKD's counterclaim could have been litigated in the 2006 Case. Therefore, the federal res judicata doctrine applies and the claims that Stafford has brought in this case are barred.

**Judicial Estoppel**

Jewelers also argues that all of Stafford's claims are barred by judicial estoppel. Stafford responds that judicial estoppel does not bar its claims.

Judicial estoppel has been described by the Supreme Court as preventing a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *New Hampshire v. Maine*, 532 U.S. 742, 749-751 (2001). The Sixth Circuit has recently applied the doctrine of judicial estoppel to a legal malpractice claim where the legal malpractice claim was premised on alleged misdeeds in an underlying medical

malpractice action. *Watkins v. Bailey*, 484 F. App'x 18 (6th Cir. 2012).

This case is not another phase of the 2006 case, and Jewelers is arguing that Stafford is judicially estopped from now taking positions different from those taken in the 2006 Case. However, this case is based upon alleged misdeeds by Jewelers in the 2006 Case to wit Jewelers' failure to defend Stafford against JKD's counterclaim. Thus, judicial estoppel may be considered here.

Jewelers argues that Stafford is bound by its successful previous representations that the counterclaim was one for fraud and that they had no separate fees or expenses attributable to their defense of JKD's counterclaim. Stafford responds that it was not required to bring its claims against Jewelers in the 2006 Case, that Stafford was never successful on its claim for attorneys' fees, and that the fact that Jewelers ultimately prevailed on its property claim has nothing to do with Jewelers' alleged breaches of contract and duties of good faith in this case.

Applying the doctrine of judicial estoppel, Stafford is bound by its successful previous representation that JKD's counterclaim was one for fraud. This issue is more fully addressed above and the fact that Stafford is bound by its previous representation that JKD's counterclaim was one for fraud only supports the Court's conclusion that JKD's counterclaim was one for fraud.

However, the doctrine of judicial estoppel cannot be applied to Stafford's success on its claim for attorneys' fees. Stafford makes a claim for attorneys' fees, including the fees associated with defense of JKD's counterclaim but there is no indication that Stafford was successful on this claim. In fact, the agreement settling the 2006 case indicates that each party is responsible for its own attorneys' fees.

-25-

## **Withdrawal of Tender of Counterclaim and Waiver**

Jewelers argues that Stafford's claims for recovery of defense costs related to JKD's fraud counterclaim should be dismissed because Stafford withdrew its tender of these claims for defense in writing. Jewelers also argues that Stafford expressly waived its claims. Stafford responds that the letter/agreement that forms the basis for Jewelers' claims here was ineffective for several reasons and it did not waive any of its claims because it was not required to bring them in the 2006 Case.

### The Letter/Agreement and Its Validity

At issue here is a letter/agreement dated October 26, 2007, from attorney Howard B. Randell, who represented Jewelers at the time, to attorney Diane F. Marx, who represented Stafford at the time. (Compl. Ex. A.) This is the letter/agreement that Jewelers claims is the withdrawal of Stafford's tender of JKD's counterclaim for defense and the waiver of Stafford's claims. The operative paragraph is as follows:

> You have advised that Stafford's, at this time, does not intend to contest Jewelers Mutual's coverage position as stated in its September 17, 2007 letter. Stafford's acknowledges that, based on the rationale set forth in the September 17, 2007 letter, and in the interest of avoiding further litigation, Stafford's does not intend to pursue its tender of defense and indemnity for the JKD counterclaim. The position of Stafford's is without prejudice to the claim asserted by Stafford's against Jewelers Mutual for coverage in the main case.

Mr. Randell requested that Stafford's execute and return the letter agreement confirming Stafford's agreement with Jewelers. Stafford executed and returned the letter. Stafford's signature is dated November 25, 2007.

Stafford first argues that the factual allegations surrounding the execution of this letter are important. The factual allegations identified by Stafford are that Stafford tendered its defense to

-26-

Jewelers "months prior" to Jewelers' denial and that Jewelers refused defense before the letter. Also, Stafford argues that there is no consideration for the letter. Finally, Stafford argues that Jewelers never informed Stafford that Jewelers' own coverage counsel advised that Jewelers had a duty to defend an allegation of reckless fraud.[4]

The Court fails to see how the alleged fact that Stafford tendered its defense prior to Jewelers' denial and the alleged fact that Jewelers refused defense before the letter are relevant to the subsequent signing of the letter/agreement. Therefore, this argument is without merit.

Stafford also argues that there is no consideration for the letter. However, a waiver requires only a voluntary relinquishment of a known right and is generally applicable to all rights, whether contractual, statutory or constitutional. *See Glidden Co. v. Lumbermen's Mutual Casualty Co.*, 861 N.E.2d 109, 118 (Ohio 2006). Thus, consideration is not a requirement for waiver. This argument, too,  is without merit.

Finally, the alleged fact that Jewelers never informed Stafford that Jewelers' coverage counsel advised that Jewelers had a duty to defend an allegation of reckless fraud is also without merit. The coverage opinion never mentions reckless fraud and recommends that Jewelers deny coverage. This argument, too, is without merit.

Waiver

Jewelers argues that Stafford waived its claims because Stafford executed an express written waiver and because Stafford failed to take any action at all during the 2006 Case to raise any of the claims that it now raises. In addition to arguing that the factual allegations surrounding the execution of this letter are important, Stafford argues that the letter does not constitute

---

[4]As more fully discussed above, this allegation is without factual support.

-27-

relinquishment of a known right with the intent to do so and with the full knowledge of the facts. This is because, according to Stafford, it was "bullied" during a crisis by Jewelers. Also, according to Stafford, Jewelers maintained that Stafford had no rights in order to induce the signing of the letter. Stafford also now says that it did not intend to relinquish any rights, and the letter was not signed with full knowledge of the facts because it was based upon a "superficial and incorrect analysis" by Jewelers. However, in spite of what it now claims, Stafford signed the letter and did not have to do so.

Stafford also argues that it did not waive its claims because the letter cannot rewrite the terms of the Policy. While this may be true, the letter can serve as a waiver of terms of the Policy.

Stafford's final argument is that the letter must be construed against Jewelers, the drafter. An Ohio appeals court has found that the law does not favor releases from liability for future tortious conduct. *Geczi v. Lifetime Fitness*, 973 N.E.2d 801, 804 (Ohio Ct. App. 2012). This same court also found that a contract is construed against its drafter unless the terms are unambiguous and clear on their face. *Id.*

In this case, the letter says that Stafford's does not intend to contest Jewelers Mutual's coverage position as stated in its September 17, 2007 letter **at this time**. The "coverage position" is in regard to JKD's counterclaim. However, the letter goes on to say that Stafford's does not intend to pursue its tender of defense and indemnity for the JKD counterclaim.

When viewed in a light most favorable to Stafford, the language in the letter/agreement is not a waiver. Stafford says it does not intend to contest **at this time**. Therefore, according to the letter/agreement, Stafford could contest Jewelers Mutual's coverage position at some time in the future and Stafford did not waive this right in the letter/agreement.

-28-

Regarding Stafford's failure to take any action at all during the 2006 Case to raise any of the claims that it now raises, as determined above, the federal res judicata doctrine applies and the claims that Stafford has brought in this case are barred. If the federal res judicata doctrine did not apply, Stafford's failure to take any actions regarding their current claims in the 2006 case, would be a voluntary relinquishment of a known right because Stafford could have brought its current claims then and elected to not do so. Stafford's failure to take any action on Jeweler's alleged failure to defend in the 2006 Case constitutes a waiver.

Withdrawal of Tender of Counterclaim

In the letter/agreement, Stafford says that it does not intend to pursue its tender of defense and indemnity, and the phrase "at this time" is not in this sentence. Clearly, then, Stafford is withdrawing its tender of JKD's counterclaim in the letter/agreement.

Stafford arguably re-tendered JKD's counterclaim for defense on November 23, 2010. (FAC ¶ 87.) However, this was well after the 2006 Case was completed and Stafford would not be entitled to any damages if it were successful.

In sum, Stafford's claims for recovery of defense costs related to JKD's fraud counterclaim should be dismissed because Stafford withdrew its tender of these claims for defense in writing and arguably re-tendered them long after the sought-after costs were incurred. However, although the letter/agreement is not a waiver of Stafford's right to contest Jewelers Mutual's coverage position at some time in the future, Stafford's failure to take any actions regarding their current claims in the 2006 case is a waiver of those claims. All of Stafford's claims could be dismissed on the basis that Stafford withdrew its tender of these claims for defense in writing, and because Stafford waived the claims that it now brings.

-29-

### Contract Claim Barred By the Limitations Period In the Policy

Jewelers argues that Stafford's breach-of-contract claim is barred by a one-year contractual limitations period. Stafford responds that Jewelers' reliance on this provision is misplaced because Jewelers cites the wrong policy.

Jewelers issued the Pak to Stafford effective from September 15, 2005, through September 15, 2006. (FAC ¶ 3.) The Pak includes three separate policies: (1) the Businessowners Special Policy; (2) the Jewelers Block Policy; and (3) the Commercial Umbrella Liability Policy. (Id. Ex. A.) The basis of Stafford's FAC is the Businessowners Special Policy, termed the Policy throughout this Entry and Order. (Id. ¶ 1.)

The basis for Jewelers assertion that Stafford's breach-of-contract claim is barred by a one-year statute of limitations is the Jewelers Block Policy. The Jewelers Block Policy insures Stafford's inventory of jewelry and, pursuant to the "Suit Against Us" section, requires that suits to recover loss must be brought within one year after the loss.

The basis for Stafford's breach-of-contract claim is breach of the Policy (the Businessowners Special Policy). The relevant portion of the Policy insures Stafford for commercial liability. The "Suit Against Us" section in the Policy does not include a requirement that suit be brought within one year of a loss. (FAC Ex. A.)

Therefore, Jewelers argument that a one-year contractual limitations period applies to Stafford's breach-of-contract claim is without merit. The breach-of-contract claim is based upon the commercial liability section of the Policy which has no limitation period per se and Jewelers' argument is based upon the Jewelers Block Policy which has a one-year limitations period.

### Summary of Analysis of Jewelers' MJOP

The Court has considered Stafford's FAC, documents both referred to in the FAC and attached to the FAC, matters of public record, and the arguments of counsel. Based upon this consideration, the only reasonable interpretation of JKD's counterclaim against Stafford is that it is a fraud claim. Fraud claims are not covered by the Policy. Thus, Jewelers has no duty to defend Stafford against JKD's counterclaim. Because Jewelers has no duty to defend, all of the claims that Stafford brings in this lawsuit are dismissed.

All of the claims that Stafford brings in this lawsuit may also be dismissed for other reasons. The claims that Stafford has brought in this case are barred by the federal res judicata doctrine. Also, Stafford withdrew its tender of these claims for defense in writing and Stafford waived its claims. Finally, Stafford's bad-faith claim is barred by the four-year statute of limitations.

Therefore, Jewelers' MJOP (doc. #47) is granted. Stafford's FAC is dismissed.

**ANALYSIS OF STAFFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Stafford filed a Motion for Partial Summary Judgment (doc. #43) approximately two (2) weeks before Jewelers' MJOP was filed. However, this timing is not relevant.

Jewelers' MJOP has been granted and Stafford's FAC dismissed. Therefore, there is nothing on which summary judgment may be granted and Stafford's Motion for Partial Summary Judgment (doc. #43) is moot.

Stafford seeks summary judgment that Jewelers had a duty to defend JKD's counterclaim in the 2006 Case. However, as determined above, Jewelers did not have a duty to defend. Therefore, even if Stafford's Motion for Partial Summary Judgment was not moot, which it is, it would not be granted. Finally, the captioned cause is hereby ordered terminated upon the docket

records of the United States District Court for the Southern District of Ohio, Western Division, at

Dayton.

      **DONE and ORDERED** in Dayton, Ohio this Fourth day of March, 2013.


                                               **s/Thomas M. Rose**


                             _____

                                   THOMAS M. ROSE
                          UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record